

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 3: 14CR133 |
| v. ) | |
| ) | 18 U.S.C. § 2314 |
| JIMMIE ALAN LANE, ) | Interstate Transportation of |
| ) | Stolen Property |
| ) | (Counts 1, 2 – 3) |
| Defendant. ) | |
| ) | Forfeiture Notice |

## INDICTMENT

### SEPTEMBER 2014 TERM - AT RICHMOND, VIRGINIA

THE GRAND JURY CHARGES THAT:

### COUNTS ONE-THREE
(Interstate Transportation of Stolen Property)

At all times material herein:

A.  Introduction

1.  The defendant, JIMMIE ALAN LANE, was a resident of Richmond, Virginia.

2.  Metis/America Marketing, Inc. (Metis) was a Virginia corporation in the business of advertising and marketing services. In or around November 2002, LANE became an employee of Metis. LANE was originally hired as a consultant and account manager. At some time in 2003, LANE became an officer and director

of Metis, holding the position of corporate secretary. In or around September 2008, LANE became primarily responsible for the finances of the corporation, which were managed through the use of QuickBooks. At the time, Metis maintained a deposit account with Wachovia used as an operating account for the corporation. LANE resigned from Metis/America Marketing, Inc. on or about October 27, 2009.

B. The Scheme

3. Beginning in or about the fall of 2007 and continuing thereafter up to the fall of 2009, in the Eastern District of Virginia, JIMMIE ALAN LANE, the defendant herein, unlawfully, willfully, and knowingly did devise a scheme and artifice (a) to defraud Metis/America Marketing, Inc., and (b) to obtain money, funds, credits and other property owned by and under the custody and control of Metis/America Marketing, Inc., by means of materially false and fraudulent pretenses, representations, and promises, as more particularly set forth herein.

C. Manner and Means of the Scheme

4. It was a part of the scheme that in order to obtain Metis funds without the knowledge or authorization of the corporation, LANE took "advances" by writing checks from the Wachovia operating account to himself for personal use.

5. During the period August 15, 2007, through October 16, 2009, LANE facilitated more than 70 separate transactions in which he withdrew from the Metis Wachovia account not less than $108,049.82 for LANE's personal use and

advantage. None of these withdrawals were done with the consent or knowledge of Metis.

6. On or about June 12, 2009, LANE was confronted about the withdrawals from the Metis Wachovia account. It was a further part of the scheme that to lull Metis into a false sense of security and obtain more money, LANE provided an email, on or about June 15, 2009, in which he stated regret for his actions and a desire to work to repay his obligations to Metis.

7. It was a further part of the scheme, that on or about June 22, 2009, after being confronted about the misappropriation of funds from the Metis Wachovia account, LANE opened a new deposit account in Metis' name at Branch Banking & Trust Company (BB&T) without the consent or knowledge of Metis.

8. It was a further part of the scheme that in opening this account at BB&T, LANE falsely represented to BB&T that he was the president and CEO of Metis.

9. It was a further part of the scheme, that to further conceal the existence of the account from Metis, LANE listed the address of his personal residence, rather than the business address of Metis, on the bank account.

10. It was a further part of the scheme that LANE deposited funds intended for Metis into this account and used those funds for personal expenses. From July 2009 to October 2009, LANE made unauthorized deposits of Metis funds into the BB&T account totaling $164,224.50. During that same period, LANE used at least

$105,710.66 of those funds for personal expenses.

11. On or about October 8, 2009, Metis became aware of and closed the BB&T account. It was a further part of the scheme that LANE opened another bank account in Metis' name at Bank of America.

D. <u>Interstate Transportation of Stolen Property</u>

12. On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, the defendant, JIMMIE ALAN LANE, did unlawfully transport, transmit, and transfer, and cause to be transported, transmitted and transferred, in interstate commerce, from the State of Virginia to the State of North Carolina, fraudulently obtained goods, wares and merchandise, that is, checks written by Lendmark Financial Services to Metis, of the value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud, as set forth below:

| Count | Date | Item |
|---|---|---|
| 1 | 09/18/2009 | Caused to be transported in interstate commerce from the Eastern District of Virginia to a location outside the Commonwealth of Virginia in the State of North Carolina items of fraudulently obtained property in the form of a $15,179.44 check from Lendmark Financial Services written to Metis |
| 2 | 9/21/2009 | Caused to be transported in interstate commerce from the Eastern District of Virginia to a location outside the Commonwealth of Virginia in the State of North Carolina items of fraudulently obtained property in the form of a $21,033.05 check from Lendmark Financial Services written to Metis |

| 3 | 9/28/2009 | Caused to be transported in interstate commerce from the Eastern District of Virginia to a location outside the Commonwealth of Virginia in the State of North Carolina items of fraudulently obtained property in the form of a $25,500.00 check from Lendmark Financial Services written to Metis |

(In violation of Title 18, United States Code, Sections 2(b) and 2314.)

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) Fed. R. Crim. P., the defendant is hereby notified that if convicted of any of the offenses charged in Counts One through Three of this Indictment, he shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses charged.

Property subject to forfeiture includes, but is not limited to:

**The sum of at least $200,000 representing the proceeds of the offenses charged, to be offset by the forfeiture of any specific property, constituting substitute assets for the proceeds.**

If the property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C), incorporated by Title 28, United States Code, Section 2461(c)).

A TRUE BILL:



_____
FOREMAN

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

DANA J. BOENTE
UNITED STATES ATTORNEY

By: *[signature: A. Jrs. As S. David Schuller for]*
David T. Maguire
Assistant United States Attorney
Virginia Bar No. 29323